## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| HOWARD J. HASKETT and KATHLEEN M. HASKETT,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME CENTERS, LLC; KIT HOMEBUILDERS WEST, LLC, BENNETT TRUCK TRANSPORT, LLC; and JOHN DOES 2-5<br><br>Defendant. | **CV-21-68-BU-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Howard and Kathleen Haskett ("Plaintiffs") filed this action against American Home Centers, LLC, ("AHC") Kit Homebuilders West, LLC, ("Kit") and Bennett Truck Transport, LLC ("Bennett").

Plaintiffs have sued AHC, Kit, and Bennett for negligence, negligent misrepresentation, constructive fraud, violations of the Montana Consumer

1

Protection Act, deceit, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, and malice and fraud. (Doc. 22 at 20-25.)

Plaintiffs settled their claims with Defendant Bennett in August 2022. (Doc. 59.) Plaintiffs and AHC and Kit ("Defendants") now individually move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Doc. 63); (Doc. 60); (Doc. 70.) Each party has also filed several Motions in Limine.  (Doc 50); (Doc. 53); (Doc. 66); (Doc. 68); (Doc. 73); (Doc. 80); (Doc. 82). The Court held a hearing on these motions on October 6, 2022. The Court has scheduled a jury trial for December 13, 2022.

## BACKGROUND

Plaintiffs purchased a modular home from AHC, a retailer exclusively selling Kit Homebuilders Homes, on December 19, 2017. (Doc. 61 at 5.) Plaintiffs allege that AHC and Kit induced them into purchasing the home with representations about the quality of the home. These representations include the following: that the modular home would conform to building codes; it would be constructed according to Plaintiffs' specifications; and it would be constructed with high quality materials and sound workmanship. (*Id.* at 5.) Plaintiffs claim that AHC and Kit's staff, website, the final Purchase Agreement, and final walk-through checklist all made these representations. (*Id.* at 6-8.)

Kit built the home in Caldwell, Idaho. (*Id.* at 5.) Kit and AHC hired Bennett to transport the modular home in two parts. (*Id.* at 5.) Plaintiffs allege that the home was damaged during transportation to Montana around July 18, 2018. (Doc. 64 at 3.)  Plaintiffs allege that the uneven stress that occurred from that event caused substantial damage to the home. (*Id.* at 2.)

Plaintiffs also allege that many defects were apparent after home was delivered and assembled. These defects include improperly installed windows and a sliding glass door; egress windows that do not fully open; other windows installed upside down; broken flooring; unpainted portions of the house; an unlevel island countertop; sheared wall structures; and a faulty roof system. (*Id.* at 2-3.)

AHC conducted a final walk-through of the property and generated a report titled "American Home Centers, LLC, final walk-through." Plaintiffs assert that the final walk-through report included notes that several damaged areas, structures, and components were "complete." (Doc. 95 at 10); (Doc. 65-6.) Plaintiffs assert that these items were not complete and showed visible defects at the time of the walk-through, including insulation blockage, detached gusset plates, and detached baseboards. (Doc. 95 at 6.) Plaintiffs also allege that Defendants ignored the seriousness of these defects and instead informed Plaintiffs that any necessary repairs were "standard" and "simple post-delivery repairs." (Doc. 64 at 3.)

Plaintiffs claim that they requested that Defendants make the necessary repairs several times in the months following the walk-through. (*Id.* at 3.) Plaintiffs and Defendants now dispute the extent of the repairs needed and the scope of Defendants' responsibility for assuring the home's quality. Plaintiffs allege that their home requires $280,000 in repairs as a result of Defendants' conduct. (*Id.* at 3.)

## DISCUSSION

The Court will grant summary judgment when the moving party demonstrates both an absence of material fact issues and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The summary judgment inquiry requires examining the evidence in the light most favorable to the nonmovant. Once the movant has met this initial burden, however, the party opposing the motion "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## I.   **Defendant American Home Centers' Motion for Partial Summary Judgment (Doc. 60)**

AHC asks for summary judgment on Plaintiffs' claims for 1) negligent misrepresentation; 2) constructive fraud; and 3) violation of the Montana Consumer Protection Act. (Doc. 61 at 5.) Kit has joined in this Motion.

Negligent misrepresentation claims require proving the following elements: 1) the defendant made a representation as to a past or existing material fact; 2) the representation must have been untrue; 3) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; 4) the representation must have been made with the intent to induce the plaintiffs to rely on it; 5) the plaintiffs must have been unaware of the falsity of the representation, and they must have been justified in relying upon the representation; and 6) the plaintiffs, as a result of their reliance, must sustain damage. *Cechovic v. Hardin & Assocs.*, 902 P.2d 520, 525 (Mont. 1995).

A constructive fraud claim requires proof of the following elements: 1) a material representation; 2) the falsity of that representation; 3) the speaker's knowledge of that representation's falsity or ignorance of its truth; 4) the hearer's ignorance of that representation's falsity; 5) the hearer's reliance upon the truth of that representation; 6) the hearer's right to rely upon that representation; and 7) the hearer's consequent and proximate injury or damage caused by reliance on that representation. *Dewey v. Stringer*, 325 P.3d 1236, 1240 (Mont. 2014).

The Montana Consumer Protection Act prohibits unfair or deceptive practices in commercial conduct. Mont. Code Ann.§ 30-14-103. The law deems an act or practice "unfair" if it "offends established public policy and . . . is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014).

### A.   Plaintiffs have alleged sufficiently that Defendants made misrepresentations regarding an existing fact.

AHC contends that claims for negligent misrepresentation, constructive fraud, and violations of the Montana Consumer Protection Act all require the defendant to have made a representation of a past or existing material fact that was untrue at the time of making the representation. (Doc. 61 at 10.) AHC argues that nearly all its representations regarding the quality of the Plaintiff's modular unit related to the future construction and quality assessments of Plaintiff's home. AHC contends that these statements cannot constitute misrepresentations, therefore, because Plaintiffs' home had not been manufactured or assembled when Defendants made the representations at issue. AHC relies on *WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*, 360 P.3d 1112 (Mont. 2015) for this proposition.

*WLW Realty* involved the representations a land developer made to a land purchaser, WLW, regarding future work, construction of ski access to a mountain chalet, that a third-party business had promised to complete. *WLW Realty Partners*, 360 P.3d at 1114. The third party was not a signatory to the contract between

developer and purchaser, and the third party's bankruptcy ultimately prevented the promised ski access construction. *Id.* WLW then sued the land developer for negligent misrepresentation related to the allegedly false representation that ski access would be built. *Id.* The Montana Supreme Court rejected this argument, explaining that the representation as to the future event of construction did not relate to a past or existing fact: "[n]ot until the representation was made could the parties determine its accuracy." *Id.* at 1117.

AHC argues that, as in *WLW*, "Plaintiffs assert that the statements later became untrue" rather than alleging that, "at the time AHC made the statements, the statements were untrue." (Doc. 61 at 21.) AHC correctly asserts that several of the representations referenced in its Motion concern work that had not yet occurred when Defendants made the statements to Plaintiffs. Examples of such representations would include the following: 1) a statement from Kit's website describing that "[t]o ensure the exceptional quality of our homes, [Kit] enforce[s] a 64- point Quality Assurance inspection program;" 2) a statement from AHC's website describing that "Modulars are built to conform to all state, local or regional building codes (USB or IBC) at their destinations . . . ;" and 3) that the final Purchase Contract described that "[a]fter the home is complete, AHC will conduct a 'walk thru.' . . . . AHC's rep will make note of any remaining service items that need to be addressed. Many repairs may be taken care of at time of walk thru, but some services

may take longer if factory specific parts are required." (Doc. 22 at ¶ 3, 9, 12.) These statements accordingly may not support the first two elements of Plaintiffs' fraud or deception-based claims.

Plaintiffs nevertheless have alleged sufficiently at least one representation Defendants made that involved a past or existing fact, and they have raised a genuine fact question whether this representation was untrue when made. This allegation allows Plaintiffs' misrepresentation-based claims to survive summary judgment. Plaintiffs specifically claim that, after AHC assembled their home, AHC staff conducted a final walk-through of the unit and completed a form titled "American Home Centers, LLC, final walk-through." (Doc. 95 at 10.)

This form includes several categories for review, including exterior, kitchen, dining room, living room, master bedroom, and utility room, among others. (Doc. 65-6.) Each category includes the related components of the home. For example, the "exterior" section includes line items for "roof/shingles, roof/vent, soffit & facia, . . . windows, . . . [and] exterior doors." (*Id.* at 1.) The form lists check options for each item; either "complete," "Kit Warranty," or "AHC," indicating whether the item is complete or requires additional repairs from either Kit or AHC. (*Id.*)

Plaintiffs point out that many of the items on their form are marked "complete." (Doc. 95 at 10); (Doc. 65-6.)  Plaintiffs allege that, contrary to the representations on the form, many of these items were not complete and will require

substantial repairs, including repairs to the roof system, the attic ventilation system, windows, and walls. (Doc. 95 at 10.) This walk-through report could qualify as a statement regarding then-existing facts about the construction and assembly of the home. This form leaves open a factual question whether Defendants' statements regarding the installation of the home were untrue when made regardless of the parties' dispute over the extent of the repairs needed.

Plaintiffs also have argued that their Montana Consumer Protection Act claim does not limit itself to deception-based conduct. (Doc. 95 at 3.) The Court agrees. The Montana Consumer Protection Act prohibits unfair or deceptive practices in commercial conduct. Mont. Code Ann. § 30-14-103. An "unfair" act or practice under the law "offends established public policy" and causes serious injury. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014). The Act reaches "more broadly" than mere deception and includes "practice[s] contrary to 'established public policy.'" *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017) (citation omitted). Plaintiffs have alleged that, among other unfair practices, Defendants failed to comply with applicable building codes, failed to train staff properly, and repeatedly ignored Plaintiffs' service requests. (Doc. 95 at 5-6.) These allegations raise material fact questions regarding whether Defendants acted in a manner "contrary to 'established public policy.'" *Anderson*, 407 P.3d at 700.

Plaintiff's Montana Consumer Protection Act claim also survives summary judgment.

## II. Defendant Kit Homebuilders West's Motion for Summary Judgment on Count VI and Count VII (Doc. 70)

Kit has asked the Court to grant it summary judgment on Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims. (Doc. 72 at 1-2.) Kit also has asserted that no agency relationship existed between AHC and Kit. (Doc. 108 at 3-4.)

A breach of contract claim requires proving three factors: 1) the existence of a valid and enforceable contract; 2) breach of an express or implied contract duty or obligation; and 3) resulting damages. *Tin Cup Cty. Water & Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 62 (Mont. 2008). Every valid contract contains an implied covenant of good faith and fair dealing: "[a] breach of the covenant is a breach of the contract." *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990) *overruled on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap*, 79 P.3d 250 (Mont. 2003).

Montana law recognizes both actual agency and ostensible agency. "An agency is actual when the agent is really employed by the principal." Mont. Code Ann. § 28-10-103(1). Ostensible agency arises "when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." *Id.*

10

Ostensible authority is "that which a principal, intentionally or by want of ordinary care, allows a third person to believe the agent to possess." *Northwest Polymeric v. Farmers State Bk.* 768 P.2d 873, 875 (Mont 1989). The ostensible agency or authority arises from the acts of the principal, not the agent. *Bellanger v. American Music Co.,* 104 P.3d 1075, 1078 (Mont. 2004). Words or conduct of the parties may imply ostensible authority, however, even if an alleged principal denies its existence, and circumstantial evidence may support a finding of ostensible agency or authority. *Youderian Constr. v. Hall,* 945 P.2d 909, 913 (Mont. 1997) (citing *Audit Servs. v. Elmo Rd. Corp.,* 575 P.2d 77, 81 (Mont. 1978)); *see also Butler Manufacturing Co. v. J & L Implement Co.,* 540 P.2d 962, 965-66 (Mont. 1975). Montana law also requires that a third party's belief in the ostensible agency relationship prove reasonable. *Turjan v. Valley View Estates,* 901 P.2d 76, 82 (Mont. 1995).

### Additional factual background

Kit advertises its services on its website. The website states that Kit sells its homes "exclusively through a carefully selected network of local retail partners." (Doc. 98 at 3.) Kit's website describes that it offers homes "exclusively through a carefully selected network of local retail partners," and it lists AHC as such a partner. (*Id.* at 2-3.) Plaintiffs have alleged that they viewed Kit's website first when deciding to purchase their modular home. (Doc. 97 at 2-3.)

Plaintiffs contracted with AHC in December 2017 to purchase their modular home. (Doc. 71 at 2.) Plaintiffs and AHC signed a purchase agreement with a purchase price of $220,741. (*Id.*) Kit was not a party to the Purchase Agreement. (*Id.*) The Purchase Agreement executed between AHC and Plaintiffs references Kit and describes Kit's responsibilities for warranty work to be performed under the contract. (Doc. 97 at 4.)

Kit's logo also appears on each page of the final construction plan for Plaintiffs' home, and Kit, rather than AHC, holds the Montana state building permit for Plaintiffs' home. (*Id.*) Kit's Montana building permit states that "[i]t remains the responsibility of the permit holder [Kit] to comply with the State Building Codes regardless of whether noncomplying items were identified during plan review or during in[s]pection." (*Id.* at 3-4.) Plaintiffs also have alleged that AHC regularly referred them to Kit representatives to discuss their concerns about the home. (*Id.*)

**A.    There exists a factual dispute whether an ostensible agency relationship existed between AHC and Kit.**

Kit argues that it did not sign the Purchase Agreement contract between AHC and Plaintiffs and was not a party to this contract. (Doc. 72 at 4.) For this reason, Kit contends that Plaintiffs' breach of contract claim against Kit should fail regardless of Plaintiff's assertion that Kit "owed [Plaintiffs] a duty to perform the written purchase agreement." (*Id.* at 3.) Kit argues that it cannot have breached that contract because it remains undisputed that Kit was not a signatory to the Purchase

Agreement contract between Plaintiffs and AHC. (*Id.* at 4-5.)  Kit asks for summary judgment on Plaintiffs' implied covenant of good faith and fair dealing claim for the same reason. The Court disagrees as to both claims.

Plaintiffs do not dispute that Kit did not sign the Purchase Agreement. (Doc. 97.) Plaintiffs also have not claimed that Kit "really employed" AHC. (*Id.*) Plaintiffs correctly have noted, however, that Kit may remain liable under the Purchase Agreement contract so long as an ostensible agency relationship existed between AHC and Kit. (*Id.* at 5.)  Montana law provides that a principal may be held liable for the acts of its ostensible agents. Mont. Code Ann. § 28-10-602. "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent who is not really employed by [it]." Mont. Code Ann. § 28-10-103.

Summary judgment only proves appropriate, then, if Plaintiffs have failed to raise genuine issues of material fact as to whether Kit intentionally or negligently led Plaintiffs to reasonably believe that AHC was Kit's employee. *See Sunset Point Partnership v. Stuc O–Flex Intern., Inc.,* 954 P.2d 1156, 1160-62 (Mont. 1998). Kit has argued that only its conduct before AHC and Plaintiffs executed the Purchase Agreement may form the basis of Plaintiffs' belief because any later evidence "could not have [been] relied upon . . . to believe that they were entering a contract with both AHC and Kit . . . ." (Doc. 108 at 3.) Kit identifies only a single act from

Plaintiffs' offered evidence that meets this chronological requirement: that Kit lists authorized dealers, including AHC, on its website. (*Id.* at 2.) Kit contends that this conduct, standing alone, cannot support a reasonable belief that AHC was Kit's agent. (*Id.* at 3.) None of the cases Kit cites, however, makes this "before" and "after" distinction.

The Montana Supreme Court in *Youderian Const., Inc. v. Hall*, 945 P.2 909, 913 (Mont. 1997), for example, identified the existence of an ostensible agency relationship by analyzing the conduct of alleged principals and agent both before and after the putative agent hired a third-party contractor to perform road construction work near the principals' cabin. The Ninth Circuit similarly in *Gus & Jacks Tire Shop v. Renzor*, 8 Fed. Appx. 696 (9th Cir. 2001), considered the actions of an alleged agent, an authorized waste oil heater installer, and an alleged principal both before and after the installer contracted and performed work for a third-party business. The Montana Supreme Court again in *Sunset Point Partnership v. Stuc-O-Flex Intern.*, 954 P.2d 1156 (Mont. 1998), and *Semenza v. Kniss*, 189 P.3d 118, 1191 (Mont. 2008), considered the actions of alleged principals and agents after the agent had entered contracts and commenced work for third parties. This Court will consider all evidence Plaintiffs have presented in response to Kit's Motion in determining whether there remains a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Words or conduct of the parties may imply ostensible authority even if an alleged principal denies its existence. *Youderian Constr. v. Hall,* 945 P.2d 909, 913 (Mont. 1997) (citing *Audit Servs. v. Elmo Rd. Corp.,* 575 P.2d 77, 81 (Mont. 1978).) The conduct at issue here leaves an open question whether ostensible authority may be implied regardless of Kit's denial.  Kit did not sign the Purchase Agreement, for example, but the Purchase Agreement identifies Kit as the builder. (Doc. 71-2 at 1, 5.) Plaintiffs have offered additional evidence that they understood AHC to be an exclusive retailer of Kit homes and that they believed AHC and Kit worked together and were both ultimately responsible to "get [the finished product] right." (Doc. 97 at 9-10.)

Plaintiffs have pointed out that the Purchase Agreement articulates Kit's specific warranty obligations and that Kit's logo prominently appears on AHC's materials and website. (*Id.* at 9-10.) It remains undisputed that Kit, not AHC, holds the Montana state building permit required for Plaintiffs' home's construction. (*Id.*) Plaintiffs also have alleged that Kit provided no disclaimer of any agency relationship between AHC and itself and that Kit, rather than solely AHC, communicated with Plaintiffs regarding their construction concerns. (*Id.*)

This evidence accordingly raises a factual dispute regarding whether an ostensible agency relationship existed between Kit and AHC that would make Kit liable for a contract breach. *See Burkland v. Electronic Realty Associates, Inc.*, 740

P.2d 1142 (1987). Kit's conduct, including its warranty obligations listed in the Purchase Agreement, its obtaining the building permit for Plaintiffs' home, and its advertising activity, could constitute the acts or representations required to create an ostensible agency. *Id.*

Reasonable jurors thus could disagree that AHC acted as Kit's agent in allegedly breaching the Purchase Agreement contract during the manufacture, transportation, assembly, and follow-up repair of Plaintiffs' modular home. This remains true regardless of whether Kit signed the purchase agreement. Kit is not entitled to summary judgment on Plaintiffs' contract breach claims.

### III.   Plaintiffs' Motion for Partial Summary Judgment (Doc. 63)

Plaintiffs argue that the Montana Home Inspection Trade Practices Act applies to AHC and its "final walk-though" of their modular home constituted a formal home inspection. (Doc. 64 at 4-5.) The Home Inspection Trade Practices Act in force at the time of AHC's walk-through defined a home inspection as "a physical examination of a residential dwelling to identify major defects . . . in various including mechanical, electrical, and plumbing systems in addition to structural and other essential components." Mont. Code Ann. § 30-14-1002 (2017). The Home Inspection Act provided that "[h]ome inspections are performed for compensation and employ visual observation and the testing of user controls but not mathematical or specialized engineering sciences." *Id.*

The Home Inspection Act also provided that "[a] person who provides home inspection services . . . who does not comply with the provisions of this part is engaging in an unfair trade practice and is subject to" the Montana Consumer Protection Act. Mont. Code Ann. § 30-14-1005 (2017). The Home Inspection Act directed that home inspection reports must clearly identify and describe 1) the inspected systems, structures, and other relevant components of the dwelling; 2) major visible defects in the inspected systems, structures, and other relevant components of the dwelling; and 3) any recommendations for further evaluation of the property. Mont. Code Ann. § 30-14-1002(2)(a-c) (2017).

A.   **There exists a factual dispute whether AHC's final walk-through constituted a "home inspection" under the Montana Home Inspection Trade Practices Act.**

Plaintiffs contend that AHC's "final walk-through" was actually a "physical examination" of a "residential dwelling" for the purpose of "identify[ing] major defects." (Doc. 64 at 4-5.) The Home Inspection Trade Practices Act defined a home inspection as "a physical examination of a residential dwelling to identify major defects . . . ." Plaintiffs argue that AHC conducted a home inspection and should have complied with the all the provisions of the Home Inspection Act. (*Id.*) (citing Mont. Code Ann. § 30-14-1002 (2017))). Plaintiffs maintain that this requirement entitles them to judgment as a matter of law on their Montana Consumer Protection Act claim. The Court rejects this argument.

The Home Inspection Act applied only to home inspectors who perform a specific type of inspection and are paid in exchange for generating a report summarizing a formal inspection. Mont. Code Ann. § 30-14-1002 (2017). Unlike a licensed home inspector, AHC is in the business of selling prefabricated homes and assisting with their assembly and repair. Similar to factual disputes regarding what AHC's final walk-through identified as problems and which repairs ultimately are Defendants' responsibility, reasonable jurors could disagree whether AHC's final walk-throughs constitute "physical examinations" of residential dwellings within the scope of the Home Inspection Act. Relatedly, there exists a factual dispute regarding whether the final walk-through checklist AHC generated would constitute a formal home inspection report under the Home Inspection Act in force in 2017.

AHC argues that "final walk-throughs" do not constitute the type of inspection contemplated under the Home Inspection Act because they are not intended to identify major defects or structural components. (Doc. 93 at 11.) AHC instead claims that these walk-throughs serve to identify issues that may need repairs and determine whether AHC, as the retailer, or Kit, as the manufacturer, should be responsible for the repairs. (*Id.* at 12.) Plaintiffs claim that AHC conducts its walk-throughs for the purpose of checking Home Inspection Act priorities such as major mechanical, electrical, plumbing, or other essential systems in a home. (Doc. 64 at 4-6.) These

disputes reveal a factual question inappropriate for resolution on summary judgment. The Court denies Plaintiffs' Motion for Summary Judgment as well.

## IV.    Motions in Limine

The parties have filed several motions in limine asking the Court for preliminary rulings on the scope of expert witness testimony, the exclusion of certain witnesses and evidence, as well as regulation of general courtroom conduct. (Doc. 50); (Doc. 53); (Doc. 66); (Doc. 68); (Doc. 73); (Doc. 80); (Doc. 82). Motions in limine allow parties to obtain a preliminary ruling on the admissibility of evidence. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Courts possess inherent authority to manage the course of trials, and decisions to admit or exclude evidence fall within the sound discretion of the trial court. *See, e.g.*, *United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir. 1998). Additionally, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

The Court conducted an extended discussion with the parties regarding their motions in limine at the October 6, 2022 hearing. (Doc. 109.) For the reasons stated in open court, the Court now rules on several of the parties' requests.

### A.    Defendants' Motions in Limine

The Court DENIES AHC's Motion to Exclude Expert Testimony. (Doc. 50.) The Court will permit Don Davis to testify regarding his inspection of Plaintiffs'

home and the estimated cost of repairs identified in his contractor bid. The Court will not permit Don Davis to testify regarding the cause of damage to any of the items identified in the bid. The Court will also permit Loren Baker to testify regarding his experience and observations as a realtor in the local area. Plaintiffs have stipulated that they will not seek to qualify Cuyler Tonkovich as an expert, and, therefore, he may offer only non-opinion testimony. The Court also will permit Cuyler Tonkovich to testify to interest rates in 2018 and the current interest rates. Plaintiffs also acknowledge that Hunter Crose and Gina Cadena-Forney will not offer opinion testimony.

The Court GRANTS, IN PART, and DENIES WITHOUT PREJUDICE, IN PART, AHC's Motion to Exclude Partial Expert Opinions of Muth and Peterson (Doc. 53) and Kit's Motion in Limine re Testimony of Eugene Peterson. (Doc. 66.) The Court will permit Eugene Peterson to offer opinion testimony regarding the repairs Plaintiffs' home requires as well as their estimated costs. The Court will permit Eugene Peterson to testify regarding the Montana building code, its requirements, and his opinion whether the components of Plaintiffs' house meet these requirements. The Court will not permit Eugene Peterson to testify regarding whether Defendants, by failing to manufacture and assemble Plaintiffs' home according to code, made a misrepresentation to Plaintiffs. The Court will permit Franklin R. Muth to testify regarding causation of the wall and floor separations in

Plaintiffs' home. The Court directs Defendants to raise other specific objections at trial. The Court will consider any objections as they arise.

The Court GRANTS Kit's Motion in Limine to Preclude Evidence re Damages for John Haskett. (Doc. 68.)

The Court GRANTS Kit's Motion in Limine re Velin Litigation. (Doc. 73.) The Court finds that, based on Plaintiffs' current proffer, this evidence's potential for unfair prejudice and the risk of confusing the jury outweighs its potential relevance. The Court will not permit a mini-trial regarding the course of an as-yet unrelated case in Montana state court. *See Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001).

### B.   Plaintiffs' Motions in Limine

The Court DENIES Plaintiffs' Combined Motions in Limine. (Doc. 80.) Plaintiffs ask this Court to regulate a variety of attorney conduct, including barring attorneys from commenting on the justice system, barring "speaking" objections, excluding argument about whether damages recovered are taxable, barring attorneys from referring to each other as "friends," and a request that Plaintiffs may treat AHC and Kit as a single defendant during portions of the trial. (Doc. 81 at 2-7.) The Rules of Evidence and the Model Rules of Professional Conduct already regulate attorney behavior, and the Court will enforce all relevant prescriptions throughout the course

of trial. Defendants have agreed to make Ron Kendrick available for deposition prior to trial.  Plaintiffs may renew the request to exclude Kendrick as a witness should Defendants prevent Plaintiffs from deposing him within a reasonable time.

The Court DENIES WITHOUT PREJUDICE Plaintiffs' Motion in Limine to Exclude Testimony from Defendants' Retained Expert Witnesses. (Doc. 82.) The Court directs Plaintiffs to raise specific objections at trial. The Court will consider any objections as they arise.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

- AHC's Motion for Partial Summary Judgment (Doc. 60) is **DENIED**.
- Kit's Motion for Summary Judgment on Count VI and Count VII (Doc. 70) is **DENIED**.
- Plaintiffs' Motion for Partial Summary Judgment (Doc. 63) is **DENIED**.
- AHC's Motion in Limine to exclude expert testimony (Doc. 50) is **DENIED**.
- AHC's Motion in Limine to exclude partial expert opinions of Muth and Peterson (Doc. 53) is **DENIED WITHOUT PREJUDICE**.
- Kit's Motion in Limine re testimony of Eugene Peterson (Doc. 66) is **DENIED WITHOUT PREJUDICE**.
- Kit's Motion in Limine to preclude Evidence re damages for John Haskett (Doc. 68) is **GRANTED**.
- Kit's Motion in Limine re Velin litigation (Doc. 73) is **GRANTED**.
- Plaintiffs' Combined Motions in Limine (Doc. 80) is **DENIED**.

- Plaintiffs' Motion to Exclude Testimony from Defendants' Retained Experts

  (Doc. 82) is **DENIED WITHOUT PREJUDICE**.

DATED this 20th day of October, 2022.

_____

Brian Morris, Chief District Judge
United States District Court